NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BIJAN SHAKIB, individually and on behalf of all persons similarly situated, | : |
| Plaintiff, | : Hon. Dennis M. Cavanaugh |
| v. | : **OPINION** |
| | : Civil Action No: 10cv4564(DMC)(JAD) |
| BACK BAY RESTAURANT GROUP, INC., CHARLES F. SARKIS, ROBERT CIAMPA, JOHN DOES 1-10, AND ABC CORPORATIONS 1-10, | : |
| Defendants. | : |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the motion of Defendants Charles F. Sarkis ("Sarkis") and Robert Ciampa ("Ciampa") (collectively, "Defendants") to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Pursuant to Rule 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motions are denied in part and granted in part.

**I.   BACKGROUND**[1]

Plaintiff was employed from February 14, 2008 to October 23, 2008 as a server at Papa Razzi Tratorria & Bar ("Papa Razzi") in Short Hills, New Jersey. Papa Razzi is owned by

---

[1] The facts in the Background section have been taken from the parties' submissions. On this motion to dismiss, the Court will accept the factual allegations in the Complaint and Amended Complaint as true and construe all facts in Plaintiff's favor.

Defendant Back Bay Restaurant Group, Inc. ("BBRG"). (Compl. ¶ 17). Sarkis is the founder, Chief Executive Officer, and majority shareholder of BBRG. Ciampa is the Chief Financial Officer and Vice-President of BBRG.

As an hourly employee, Plaintiff was required to clock-in and clock-out of his shifts at Papa Razzi through Net-Chef, a back office information computer system that maintains daily time records for all employees. (Id. at ¶¶ 23, 24). Plaintiff states that he was terminated, ostensibly due to an "'altercation' he had with the dinner shift manager . . . and because he 'walked-out' on his shift." (Id. at ¶ 37). Plaintiff alleges, however, that the real reason he was fired was for complaining to management that "he was not being properly paid for the correct amount of total hours worked per work-week, including overtime payment." (Id. at ¶¶ 28, 37). Shortly after being fired, Plaintiff called BBRG's Human Resources Department to complain about not being paid for overtime hours he worked. (Id. at ¶ 42). After numerous failed attempts to be paid, Plaintiff contacted the New Jersey Department of Labor and Workforce Development ("NJ DOL"). On or about December 23, 2009, Ciampa e-mailed Plaintiff a one-page sample of an internal audit that BBRG had conducted of Plaintiff's pay roll records. The audit showed that Plaintiff was not previously paid for 61.15 hours of work. (Id. at. ¶ 46). Specifically, the e-mail states, "Bijan, I have attached a spreadsheet showing how we calculated the difference. I only included the first 4 weeks you worked. Please call me so I can explain the worksheet. Thanks, Bobby." Gold-Zafra Certif., Ex. D. Plaintiff "would not accept the paltry offer made by Ciampa on behalf of BBRG" and subsequently instituted the present action. (Id. at ¶ 48). In a seven-count Complaint, Plaintiff alleges: Violation of the Fair Labor Standards Act, Violation of the New Jersey Wage and Hour Law, Breach of Implied Contract, Breach of the Covenant of Good

Faith and Fair Dealing, Unjust Enrichment, a Federal Law Retaliation Claim, and a New Jersey Retaliation Claim.

II.     **STANDARD OF REVIEW**

A.  Personal Jurisdiction

Pursuant to Rule 4(k), a district court may exercise jurisdiction over a nonresident defendant to the extent permitted by the law of the state where the district court sits.  See Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004) ("A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law").  "New Jersey's long arm statute confers jurisdiction over nonresidents to the extent allowed under the United States Constitution."  Horton v. Martin, 133 Fed. Appx. 859, 860 (3d Cir. June 15, 2005).  The Fourteenth Amendment of the United States Constitution "limits the reach of long-arm statutes so that a court may not assert personal jurisdiction over a nonresident defendant who does not have certain minimum contacts with the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436-37 (3d Cir. 1987) (citation and internal quotations omitted).

For a court to exercise jurisdiction over a defendant, the defendant must have specific or general contacts with the forum.  Horton, 133 Fed. Appx. at 860.  General jurisdiction exists when the defendant has "continuous and systematic conduct in the forum that is unrelated to the subject matter of the lawsuit."  Associated Bus. Tel. Sys. Corp. v. Danihels, 829 F. Supp. 707, 711.  Specific jurisdiction exists "when the particular cause of action at issue arose out of the

defendant's contacts with the forum."  Id.  "Once a defendant raises the defense of lack of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction."  Horton, 133 Fed. Appx. at 860.  While "[a] court must accept as true the allegations in the complaint and resolve disputed issues of fact in favor of the plaintiff. . . . the plaintiff cannot rely on the pleadings alone but must provide actual proofs."  Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F. Supp. 2d 629, 633 (D.N.J. 2004).  If minimum contacts are established, "the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable."  Id.

B. Failure to State a Claim

In deciding a motion under Rule 12(b)(6), the district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the  [Plaintiff]."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.  To survive a motion to dismiss, the complaint must state a plausible claim.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  Thus, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level."  Bell Atl. Corp., 550 U.S. at 555.

**III.     DISCUSSION**

A. Personal Jurisdiction

Ciampa argues that the Court does not have either general or specific jurisdiction over him as he does not live or work in New Jersey, and does not make personal appearances in New Jersey on behalf of BBRG. Ciampa further asserts that his e-mail of an internal audit letter to Plaintiff is "isolated conduct [that] is not sufficient enough to reasonably expect to be sued in the state of New Jersey." Defs.' Br. 11.

"[A] plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). Here, Plaintiff has successful presented a prima facie case of specific personal jurisdiction. Plaintiff alleges that Ciampa sent him an e-mail that included a spreadsheet showing how much overtime pay Plaintiff was due. Compl. ¶ 47. While the act of sending this e-mail does not in and of itself establish personal jurisdiction, the Court finds that the content of the e-mail establishes prima facie evidence that Ciampa was involved in calculating Plaintiff's pay. At this point of the proceeding, the question is not one of probability, but rather whether Plaintiff has presented sufficient facts to raise a reasonable expectation that discovery will reveal evidence that the Court has specific jurisdiction over Ciampa. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (noting that Bell Atl. Corp. v. Twombly does not impose a probability requirement at the pleading stage, but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") As this action arises out of Plaintiff's

allegations that he was not being paid what he was rightly owed, the Court finds that Ciampa's contacts with New Jersey via e-mail concerning those payments are sufficiently alleged to survive a motion to dismiss.

B. Failure to State a Claim

1. FLSA and NJWHL

Defendants claim that Plaintiff has failed to plead sufficient facts that Defendants are subject to individual liability under the Fair Labor Standards Act ("FLSA") and New Jersey Wage and Hour Law ("NJWHL").[2] Under the FLSA, "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" a minimum wage. 29 U.S.C. § 206(a). An employer is defined as someone "who acts in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Supreme Court has instructed courts to construe the terms "employer" and "employee" expansively to effect Congress' remedial intent in enacting the FLSA. Wright v. Lehigh Valley Hospital and Health Network, No. 10-431, 2011 U.S. Dist. LEXIS 68012 at * 5 (E.D.Pa. June 23, 2011) (Rapoport, J.) (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992)). "Employers" are not only limited to a company but also any person "who dominates the acts of a corporation or who has the power to act on behalf of a corporation vis-a-vis its employees.

---

[2]The Court will apply the same analysis to the FLSA and NJWHL case, as is customary in this district. Ortiz v. Paramo, No. 06-3062, 2008 U.S. Dist. LEXIS 72387, at *11 (D.N.J. Sept. 19, 2008) (applying same analysis to FLSA and NJWHL claims) (citing Maldonado v. Lucca, 629 F. Supp. 483, 485 (D.N.J. 1986)).

Montalvo v. Larchmont Farms, Inc., No. 06-2704, 2009 U.S. Dist. LEXIS 112751, at *11 (D.N.J. Dec. 3, 2009) (RBK) (AMD).  Thus, "a person who has operational control of a corporation is subject to personal liability for the corporation's violations of the FLSA."  Id.  Courts must view the economic realities of a particular situation in order to determine whether a defendant will be subject to individual liability.  See Tan v. Mr. Pi's Sushi, Inc., No. 09-1579, 2010 U.S. Dist. LEXIS 134769, at *5 (D.N.J. Dec. 21, 2010) (KSH) ("[T]he consensus among courts is that the determination of whether a person is an employer cannot be limited to technical concepts, but must be viewed in accordance with economic realities").  Relevant facts to determine whether the "economic reality" test have been satisfied are: "whether the alleged employer (1) had power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).

District Courts of this Circuit have noted that, although the United States Court of Appeals for the Third Circuit has not addressed the issue, other Courts of Appeals have held that a corporate officer may be deemed to be an "employer" under the FLSA.  Wright, 2011 U.S. Dist. LEXIS 68012 at *6-7 (citing Chao v. Hotel Oasis, Inc., 493 F.3d 26, 34 (1st Cir. 2007); Donovan v. Grim Hotel Co., 747 F.2d 966, 971-72 (5th Cir. 1984)).  In addition to the "economic realities" test, these decisions have focused on "the role played by the corporate officers in causing the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits."  Id. at *7 (citing Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 678 (1st Cir. 1998)).  The factors deemed relevant to this personal liability analysis include the officer's (1) ownership interest in the corporation, (2) degree of

operation control over the corporation's daily functions, financial affairs, and compensation practices, and (3) role in the corporation's determination to compensate (or not compensate) employees in accordance with the FLSA. Id. at *8 (citing Baystate Alternative Staffing, 163 F.3d at 677-78).

The Complaint makes the following allegations regarding Sarkis and Ciampa:

- Upon information and belief, Charles F. Sarkis is, and at all relevant times has been, the founder, Chief Executive Officer and majority shareholder of BBRG, maintaining operational control of the corporation.

- Upon information and belief, Robert Ciampa is, and at all relevant times has been the Chief Financial Officer and Vice President of BBRG.

- Upon Information and belief, each Defendant was the principal, agent, partner, joint venture, controlling shareholder of the other Defendants and/or engaged with the other Defendants in a joint enterprise for profit, and bore such other relationships to the other Defendants as as to be liable for their conduct.

- On or about December 23, 2009, Robert (Bobby) Ciampa ("Ciampa"), the Chief Financial Officer and Vice President of BBRG, e-mailed Shakib a one-page sample of their "internal audit," showing that in accordance with BBRG records, he was not previously paid for 61.15 hours of work, most of which were overtime hours, between February 14, 2008 and April 12, 2008.

Compl. ¶¶ 6, 7, 10, 46.

In analyzing these allegations, the Court is mindful that employer determination is a fact-intensive inquiry, such that it can rarely even be made on summary judgment. Tan, 2010 U.S. Dist. LEXIS 134769, at *6 (citing Barfield v. New York City Health and Hosps. Corp., 537 F.3d 132, 144 (2d Cir. 2008)). While Plaintiff's allegation that Sarkis maintains "operational control of the corporation" could be said to amount to a mere formulaic recitation of the elements of an employer determination, his additional allegation that Sarkis is the Chief Executive Officer and majority shareholder of BBRG raise the inference that Sarkis could be held liable under the

-8-

personal liability analysis for corporate officers as stated in Baystate Alternative Staffing. Similarly, Plaintiff's allegation that Ciampa e-mailed Shakib a one-page sample of an "internal audit" indicates a plausible claim that Ciampa played a role in determining the rate and method of payment of employees and in maintaining employment records, thus also making Ciampa an employer under the FLSA and NJWHL. Because Plaintiff has sufficiently shown that Defendants may be considered employers, and has alleged that both Defendants played a role in denying him wages as guaranteed by the FLSA and NJWHL, the Court holds that Plaintiff has stated a prima facie cause of action under the FLSA and the NJWHL against Defendants. Therefore, the Defendants' Motion to Dismiss with respect to Counts One and Two is denied.

In addition to claims for wages under the FLSA and the NJWHL, Plaintiff has also alleged 5 other causes of action, four of which are grounded in state common law, and one of which is grounded in the FLSA. Defendants have moved to dismiss these claims as well.

2. Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, and Unjust Enrichment

Plaintiff has pled three common law causes of action that arise out of the same facts as Plaintiff's FLSA claim. These claims must be dismissed under the doctrine of preemption.

Plaintiff's first state law cause of action, Count Three, is for breach of implied contract and common law restitution. (Compl. ¶¶ 113-118). Plaintiff alleges that Defendants breached contractual obligations to Plaintiff, specifically to pay Plaintiff, in accordance with the law, for all hours worked at their place of employment. (Id. at ¶¶ 114-117). Plaintiff's second state law cause of action, Count Four, is for breach of the covenant of good faith and fair dealing

and common law restitution. (Compl. ¶¶ 119-129). Plaintiff alleges that Defendants failed to pay Plaintiff for time worked "off-the-clock," that Defendants failed to adhere to community standards of decency, fairness or reasonableness, and through bad motive intentionally failed to pay Plaintiff. (Id. at ¶¶ 124-126). Plaintiff's third common law cause of action, Count Five, is for unjust enrichment. (Id. at ¶¶ 130-135). Plaintiff alleges that Defendants failed to pay Plaintiff for all hours worked, and thus received the benefit of Plaintiff's working at their place of employment without compensation. (Id. at 131-132). Plaintiff asserts that by reaping the benefits of Plaintiff's labor but not paying Plaintiff for all hours worked, Defendants "were enriched beyond their contractual rights." (Id. at 133).

The doctrine of preemption is rooted in the Supremacy Clause, which provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance hereof . . . shall be the supreme Law of the Land." U.S. Const. Art. VI, cl. 2. The Supreme Court has identified three situations in which preemption applies: (1) "express" preemption, applicable when Congress has expressed its intent to preempt state law; (2) "field" preemption, applicable when Congress has manifested its intent to preempt state law through pervasive regulation or where a federal interest is dominant enough to preclude state enforcement; and (3) "conflict" preemption, applicable when a state law must be nullified insofar as it conflicts with federal law. Colacicco v. Apotex Inc., 521 F.3d 253, 261 (3d Cir. 2008) (quoting Hillsborough Cnty. v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985)).

This District has previously noted that "field" preemption applies to state law claims rooted in the same facts as FLSA claims. In Kelly v. Borough of Union Beach, the court considered a plaintiff's claims for breach of contract, breach of the implied covenant of good

faith and fair dealing, quantum meruit, tortious interference with economic advantage, unjust enrichment, and equitable estoppel / detrimental reliance. No. 10-4124, 2011 U.S. Dist. LEXIS 12839 at *5-8 (D.N.J. Feb. 8, 2011) (AET). Finding that all of these claims were based upon the same facts as the plaintiff's FLSA claims, that is, non-payment by the Defendants, the court dismissed those claims as preempted under the FLSA. Id. at *8. This Court agrees with that conclusion, and as such, holds Counts Three, Four, and Five barred by the doctrine of preemption.

Alternatively, the Court finds Counts Three and Four barred under the preexisting duty rule. Plaintiff's claim for breach of contract is grounded in violations of New Jersey statutory law and is thus not cognizable. "Contractual agreements to comply with preexisting legal duties are unenforceable for lack of consideration." Hyman v. WM Fin. Servs., No. 07-3497, 2008 U.S. Dist. LEXIS 35068, at *7-8 (D.N.J. Apr. 29, 2008) (WJM) (citing Berel Co. v. Sencit F/G McKinley Assocs., 710 F.Supp. 530, 536 (D.N.J. 1989)). As Defendants' obligation to pay Plaintiff arises out of the FLSA and NJWHL, Defendants' failure to pay cannot serve as the basis for a breach of contract claim. Id. at *8.

With no contract for Plaintiff to sue on, Plaintiff's claim for breach of the covenant of good faith and fair dealing and common law restitution must also fail. Covenants of good faith and fair dealing are implied in every contract in New Jersey. Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997). It follows, therefore, that in the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing. Noye v. Hoffman-LaRoche, 238 N.J. Super. 430, 434 (App. D.V.), cert. denied, 122 N.J. 146 (1990); see also Brunner v. Abex Corp., 661 F.Supp. 1351, 1356 (D.N.J. 1986) (noting that as one cannot read additional

terms into a non-existent contract, claims for breach of implied covenant of good faith and fair dealing must fail in the absence of a contract).  Plaintiff's claims for relief sound in the FLSA and the NJWHL, and not in contract law.  Plaintiff's claim for breach of the covenant of good faith and fair dealing and common law restitution is therefore not cognizable.

For these reason, Defendants' Motion to Dismiss with respect to Counts Three, Four and Five is granted.

3. Unlawful Retaliation under the FLSA

In Count Six of the Complaint, Plaintiff alleges a Federal Law Retaliation Claim under the FLSA.  (Compl. ¶¶ 136-143).  Plaintiff alleges that Defendants violated the FLSA, 29 U.S.C. § 215(a)(3), by discharging Plaintiff in retaliation for Plaintiff's continuous complaints to management about not being paid for hours worked and for overtime, and threatening to take action if not paid.  (Id. at ¶ 137).  Plaintiff alleges that on numerous occasions, he "complained to management about his 'time in' not being accurate on the computer system," and that "[b]efore he was fired, he realized he was not being properly paid . . . and he complained to his management, specifically, to his General Manager – the highest authority at Papa Razzi."  (Id. at ¶¶ 25, 28).  Plaintiff therefore claims that the reasons given for his firing, an altercation with management and walking out on his shift, were merely pre-textual, and the true reason for his firing was retaliation.  (Id. at ¶ 140).

In addition to setting minimum standards for wage practices, the FLSA makes it unlawful for an employer:

> to discharge or in any other manner discriminate against any employee

> because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). Damages may include, without limitation, "employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

To establish a prima facie case of retaliatory discrimination under the FLSA, the plaintiff must show that: (1) the plaintiff engaged in protected activity; (2) the employer took an adverse employment action against the plaintiff; and (3) there was a causal link between the plaintiff's protected action and the employer's adverse action. Barnello v. AGC Chemicals Americas, Inc., 08-3505, 2009 WL 234142 at *6 (D.N.J. Jan. 29, 2009) (WJM)(MF) (quoting Scholly v. JMK Plastering, Inc., Civ. No. 07-4998, 2008 WL 2579729, at *3 (E.D.Pa. June 25, 2008)).

Defendants lodge two arguments in favor of their Motion to Dismiss Count Six. First, Defendants argue that since they are not "employers" under the FLSA, Plaintiff is not entitled to the remedy he seeks, namely, civil damages. (Def.'s Br. 24). Defendants correctly note that § 216(b) of the FLRA limits damage remedies to violations by employers, and not individuals. 29 U.S.C. § 216(b).[3] As discussed above, however, Plaintiff has made out a prima facie showing that Defendants do qualify as "employers" under the FLSA, and as such, this argument must fail.

---

[3] Under the FLSA, individuals who violate the § 215 may only be "subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both" and not civil damages. 29 U.S.C. § 216(a).

-13-

Defendants' second argument against Count Six is that informal complaints are not considered a protected activity under the § 215 of the FLSA. (Def.'s Br. 26). In support of this argument, Defendants cite cases from the Second, Fifth, and Seventh Circuits, each finding that various informal or oral complaints to supervisors did not qualify as "protected activity" under the FLSA. (Id.); see Aneja v. Triborough Bridge & Tunnel Auth., 35 Fed. Appx. 19 (2d Cir. 2002); Booth v. Intertrans Corp., No. 94-2359, 1995 U.S. Dist. LEXIS 7593 (E.D. La. May 26, 1995) (Vance, J.). Notably, Defendants cite to Kasten v. Saint-Gobain Performance Plastics Corp., 570 F.3d 834 (7th Cir. 2009), in support of their contention. Kasten, however, was vacated by the Supreme Court, in an opinion holding that to "fall within the scope of the antiretaliation provision [of the FLSA], a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met . . . by oral complaints as well as written ones." Kasten v. Saint-Gobain Performance Plastics Corp. 131 S. Ct. 1325 (2011).

Plaintiff has alleged that he made numerous complaints to management concerning his wages, that management fired him, and that the reason for the firing was his complaints and not any altercation with management. Plaintiff has thus alleged a prima facie case that he engaged in protected activity, that Defendants took an adverse employment action against the him, and that there was a causal link between his protected action and the Defendants' adverse action. Therefore, Defendants' Motion to Dismiss Count Six is denied.

4. Retaliation under Pierce

Finally, in Count Seven, Plaintiff alleges a New Jersey retaliation claim under Pierce v. Ortho Pharm. Corp., 84 N.J. 58 (1980). (Compl. ¶¶ 144-151). The allegations behind this Count are essentially the same as Count Six, except where Plaintiff states that Defendants wrongfully discharged him "in contrast to a clear mandate of public policy." (Id. at ¶ 145).

In Pierce, the New Jersey Supreme Court recognized that an at-will employee "has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." Barnello, 2009 WL 234142 at *6 (citing Pierce, 84 N.J. at 72). An employee can prove such a wrongful discharge claim by "show[ing] that the retaliation is based on the employee's exercise of certain established rights, violating a clear mandate of public policy." Id. (citing MacDougall v. Weichert, 144 N.J. 380, 393 (1996)). "The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." Id. (citing Pierce, 417 A.2d at 512).

The existence of such a public policy is an issue of law. Mehlman v. Mobil Oil Corp., 153 N.J. 163, 187 (1998). "A salutary limiting principle is that the offensive activity must pose a threat of public harm, not merely private harm or harm only to the aggrieved employee." Id. at 1013. The public policy must also be "clearly identified and firmly grounded . . . A vague, controversial, unsettled, and otherwise problematic public policy does not constitute a clear mandate." Barnello, 2009 WL 234142 at *7 (citing MacDougall, 677 A.2d at 167).

Defendants proffer two arguments for dismissal of this count. First, Defendants argue that Pierce causes of action are permissible only against employers, and not individuals. (Def.'s Br. 27). This argument fails, as this Court has already determined that Plaintiff made a prima facie showing that Defendants are employers.

Defendants' second argument is that Plaintiff cannot identify any public policy which has been violated. (Id.) The only reference in the Complaint to public policy is Plaintiff's statement that Defendants' actions were "in contrast to a clear mandate of public policy." (Compl. ¶ 145). Plaintiff has not clearly identified a firmly grounded public harm perpetrated by Defendants. Therefore, Plaintiff has not made out a prima facie showing of a Pierce cause of action.

Alternatively, Plaintiff's Pierce cause of action is also barred by the doctrine of preemption. Courts of this Circuit have previously held state and common law claims for retaliatory discharge barred by the FLSA. See, e.g., Coyle v. Madden, 03–4433, 2003 WL 22999222 at *5 (E.D.Pa. Dec. 17, 2003) (Schiller, J.) ("Plaintiff has properly alleged a retaliatory discharge claim under FLSA. As a result, Plaintiff has an available statutory remedy for the alleged wrong, and thus, cannot maintain a wrongful discharge claim under Pennsylvania common law"); Wolk v. Saks Fifth Ave., Inc., 728 F.2d 221, 223 (3d Cir.1984) (holding that no wrongful termination claim where there are state or federal statutory remedies for wrong alleged). As Plaintiff's Pierce cause of action arises out of the exact same facts as Plaintiff's retaliation cause of action under the FLSA, the state common law cause of action is preempted.

For these reasons, Defendants' Motion to Dismiss Count Seven is granted.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss pursuant to Rules12(b)(2)

and 12(b)(6) is **denied as to counts One, Two, and Six, and granted as to Counts Three,**

**Four, Five**, **and Seven**.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

| | |
|---|---|
| Date: | September  30  , 2011 |
| Orig.: | Clerk |
| cc: | All Counsel of Record |
| | Hon. Joseph A. Dickson, U.S.M.J. |
| | File |